```
                    UNITED STATES DISTRICT COURT

                      DISTRICT OF PUERTO RICO


UNITED STATES OF AMERICA,

              Plaintiff,
v.                                    Docket No. 15-162

                                      San Juan, Puerto Rico
JAVIER GONZALEZ PEREZ,                November 4, 2015

              Defendant.
_____

                              SENTENCE

         BEFORE THE HONORABLE JUDGE JOSÉ A. FUSTÉ,

                  UNITED STATES DISTRICT JUDGE.

_____

APPEARANCES:

For the Government:      Mr. Edward Veronda, AUSA


For the Defendant:       Mr. Jose Gaztambide, Esq.
                         Mr. Joseph Boucher, Esq.
```

Proceedings recorded by stenography.  Transcript produced by CAT.

```
 1                           I N D E X
 2   WITNESSES:                                            PAGE
 3        None offered.
 4
 5   EXHIBITS:
 6        None offered.
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                                        San Juan, Puerto Rico
 2                                        November 4, 2015
 3                                        At or about 10:51 AM
 4                           *     *     *
 5          COURTROOM DEPUTY:  Criminal case 15-162, USA versus
 6   Javier Gonzalez Perez for sentencing hearing.  On behalf of
 7   the government, Edward Veronda.  On behalf of the defendant,
 8   Jose Gaztambide.
 9          The services of the court interpreter are being
10   provided to the defendant.
11          MR. VERONDA:  Good morning, Your Honor.  The United
12   States is ready to proceed.
13          MR. GAZTAMBIDE:  Good morning, Your Honor.  We are
14   ready to proceed.  Both counsel Joseph Boucher and myself
15   represent the defendant.
16          THE COURT:  Very well.  Is there any objection to the
17   contents of the Presentence Report that was prepared in this
18   case?
19          MR. GAZTAMBIDE:  Your Honor, there are none.  We have
20   read the Presentence Report with the client.  We have met with
21   him more than twice, gone over it.  The record is complete.
22   It's a good report, and professionally prepared.
23          THE COURT:  And Mr. Gonzalez, you heard what
24   Mr. Gaztambide said.  I'm asking you now, did you participate
25   with him in the reading, discussing of that Presentence
```

1  Report?
2       THE DEFENDANT:  (Nodding head up and down.)  Yes.
3       THE COURT:  Very well.  Do you have any doubt about
4  it?
5       THE DEFENDANT:  No.
6       THE COURT:  Very well.  And, government, there's no
7  objection; am I right?
8       MR. VERONDA:  No, Your Honor.
9       THE COURT:  Very well.  Anything that counsel wishes
10 to say that I don't know about already?
11      MR. GAZTAMBIDE:  Yes, Your Honor.  Very shortly.
12 First, I want to say that in this case, we met with the
13 prosecutor.  The prosecutor gave us all the evidence, and he
14 gave us a proffer on what the case was, and which really
15 helped move along the case.  But I want to mention to Your
16 Honor about my client.
17      First, there are many people here in court today with
18 him.  I want to mention who they are for the record.  It's his
19 common-law wife.  Glarry Infante Otero is here.
20      THE COURT:  You have to give her those names.
21      MR. GAZTAMBIDE:  Yes.  I will give that.  Fernando
22 Gonzalez Gonzalez, who is his father.  His mother.  Dona Alma
23 Perez Ramos.  She is here.  Then his eldest son is Javier
24 Gonzalez Pabon.  His former wife.  Doris Valderrama.  The
25 mother of his two sons.  Yadier Gonzalez and Yadielyz

1   Gonzalez.  Also his nephew.  Jessyel Colon Gil.  His former
2   boss at the Chimelys Gym.  Zoraya Santiago Fernandez is here.
3   His cousin.  Martin Narvaez.  And then friends from the gym.
4   Marionette Negron Melendez and Josuan Nunez Fernandez.  And
5   then some friends, Johanna Ramos and Jeffrey Colon.  And when
6   he was working at the Casa de los Tornillos, House of Nuts and
7   Bolts -- I know it would be only nuts, but it would sound
8   awful to say house of nuts.
9              THE COURT:  You could say nuts and bolts --
10             MR. GAZTAMBIDE:  It would sound like crazy -- but
11  it's nuts and bolts.  Steven Soto.
12             Your Honor, now that I mention about La Casa de
13  Tornillos and I mention the Chimelys Gym, this person,
14  contrary to what we normally see in this court, is a person
15  that has worked all his life.  And the report so shows.
16             He started at a very young age working at a bakery,
17  as a baker.  He worked there for two or three years.  Then he
18  went and worked at Casa la Tornillos, House of Nuts and Bolts,
19  for about seven or eight years, from the year 2000 to the year
20  2007.
21             THE COURT:  Which of the stores?
22             MR. GAZTAMBIDE:  In Arecibo?
23             THE DEFENDANT:  Manati.
24             MR. GAZTAMBIDE:  Manati, Your Honor.  Sorry.
25             And then he worked at the end, the last three or four

1    years he spent at the Chimelys Gym working there.

2             Your Honor, his past caught up with him.  Yesterday I
3    was talking to him, and he told me, my past caught up with me.
4    He had quit the conspiracy, which he accepted he was a member.

5             THE COURT:  The thing is everybody's past catches up
6    with you.

7             MR. GAZTAMBIDE:  Eventually, Your Honor, it will.

8             And when he was at the gym, he thought that this had
9    been the greatest experience.  He met there his present
10   common-law wife.  She's a psychology student.  She's about to
11   finish.  And they had planned to move to the States, not in
12   the way that he will be moved now, but that they would move
13   together, because she wants to continue her studies.  And he
14   was there going to go to work.

15            He was hoping to get a recommendation from the
16   Chimelys Gym to see if he could start working in one of the
17   big gyms in the States, because that's what he likes.  He
18   likes that, and he likes sports.

19            I have some photos here that were brought today on
20   his participation in baseball and basketball, that he was
21   participating in the past.  Well, all his life, but in his
22   past three or four years, he was doing it a lot.

23            And he was mending fences.  He was getting back to
24   society, working, being a good father.  Because he has always
25   been a good father with all his children.  And that's why

1   they're here.  He has always kept good relationships with his
2   former wife and with everybody, Your Honor.  And that's why
3   all the people came here.
4          They kept asking me how many people could come.  They
5   didn't know if there was a set number.  But I told them not to
6   bring the whole town, but they still brought about 16 persons
7   that are here present.
8          Your Honor, Javier wants to let the Court know that
9   he did this, and he never again -- never again, you will never
10  see him again here.  He thanks God that he met Glarry --
11  Glarry is his common-law wife -- because she has taught him
12  things that he never thought that he could achieve.  And he
13  knows that when he comes out, she will be waiting for him.
14         And she has been very helpful to us during all the
15  proceedings.  And she will be there, wherever he's sent.  She
16  has a request, if it could be in the state of Florida.  And I
17  told her it's a recommendation.  It would be up to the BOP.
18  She's looking at the state of Florida.  Apparently everybody
19  in Puerto Rico now wants to move to Florida, and that's a sign
20  of the times that we're seeing.
21         She says Javier is a good man.  That Javier is not
22  the person I see charged here.
23         And just I know he wants to address the Court.
24  That's what I wanted to say for the Court on his behalf.
25         THE COURT:  Give her the list of the names.  Give her

1  the list of names.  Very well.  Thank you.

2         Sir, what do you have to say?  Mr. Gonzalez?

3         THE DEFENDANT:  Good morning, Your Honor.  First of

4  all, I want to say that I'm very remorseful for everything.

5  Having been in jail eight months hasn't been easy.  There's

6  been a lot of pain, a lot of suffering.

7         I have been for three years very much working in a

8  gym.  Apart from that, I have been working at the House of

9  Nuts and Bolts for eight years working.  Before that, I was

10 working at a bakery, also.  Besides that, while in jail, I

11 have been working as an orderly during the whole time I've

12 been in jail.

13        Besides that, I would like to ask for a

14 recommendation to see if I could study mechanics or

15 refrigeration, everything that I can learn.  And everything

16 that I can do to be able to be back with my family to recover

17 my family again.

18        I want to tell my family that I love them with all my

19 heart, to my children, my present wife.  I want to tell her

20 that I thank her for being here throughout this whole process

21 and helping me.

22        And I want to ask you for a favor since one of my

23 children's birthday is today, ask you if I can hold him in my

24 arms and kiss him.

25        THE COURT:  Who is the kid?  Who is the kid?

```
 1              THE DEFENDANT:  My oldest child.
 2              THE COURT:  Where is he?  Where is the oldest son?
 3   Which one?  That's him, the one who stood up?
 4              THE DEFENDANT:  Yes.
 5              THE COURT:  Would you please come up here to your
 6   father a minute?  Right there.  In the well.
 7              THE DEFENDANT:  Could you please give me the
 8   opportunity to hold my older two children who are in the
 9   courtroom, too?
10              THE COURT:  One by one.  One by one.  Okay.  One by
11   one.  Okay.  Very well.
12              THE DEFENDANT:  Thank you, Your Honor.  That would be
13   all.
14              THE COURT:  Government?
15              MR. VERONDA:  Your Honor, our recommendation, per the
16   Plea Agreement, is 160 months, which is the minimum term that
17   the defendant is facing before the Court today.
18              THE COURT:  Very well. We have two counts here or
19   two situations.  I called them situations.  Counts.  We have a
20   drug count, which I think is Count One, correct?
21              MR. GAZTAMBIDE:  Yes.  Conspiracy, Your Honor.
22              THE COURT:  And another count, which is firearms,
23   which is Count VI, correct?
24              MR. GAZTAMBIDE:  That is correct, Your Honor.
25              THE COURT:  Let's deal with Count I first, the drug
```

1   count.  He stipulated at the time of the plea bargaining
2   process that is contained in the Plea Agreement, that he was
3   responsible for at least five kilos, less than 15 kilos of
4   powder cocaine.  And that brings about a base offense level of
5   30.
6           Everybody's in agreement as to that?
7           MR. GAZTAMBIDE:  Yes, Your Honor.
8           MR. VERONDA:  Correct, Your Honor.
9           THE COURT:  Then of course we have the two point
10  adjustment, upward adjustment for the protected location.
11  This means that whenever you distribute narcotics in Public
12  Housing Authority buildings or within 1,000 feet of those
13  locations or in school zones, in this case it was public
14  housing, you get a two point increase in the base offense
15  level.
16          And on top of that, there is also an adjustment for
17  supervision.  You could call it organizer, leader, manager,
18  whatever, but the thing is that he got the lowest of the
19  points for that kind of situation.  That supervisory role goes
20  from two to four.  He got only two.
21          So if you take 30 plus two plus two, that's 34.
22  Minus three for acceptance of criminal responsibility.  So he
23  ends up with a 31 on the drug count.  A 31 on the drug count
24  with a Criminal History Category of I suggests an imprisonment
25  range that starts at a statutory mandatory minimum of 120

1  months up to 135 months.  And the fine range would be 15,000
2  to 150,000.  Plus supervision of at least ten years.
3           Is everybody in agreement that those are the numbers
4  for the drug count?
5           MR. GAZTAMBIDE:  That's correct, Your Honor.
6           MR. BOUCHER:  That's correct, Your Honor.
7           THE COURT:  Mr. Veronda?
8           MR. VERONDA:  Correct.
9           THE COURT:  Let's now go to the firearms count, which
10 is Count VI.  We know that Count VI, firearms, the guidelines
11 are of limited application.  We know that all they say is,
12 Judge, consider that the guideline should be the statutory
13 minimum, which is five years.  But it could be anywhere up to
14 life, but it's five years.  And -- 60 months.  Here, on the
15 firearms count, the supervision can be from two to five years.
16 And the fine range cannot exceed $250,000.  We do not apply
17 the fine table in the guidelines to this kind of case, because
18 it's not -- it's as if it was not a guideline case.  Then of
19 course we have an -- I already said two to five years.  And
20 the supervision always runs concurrently.
21          So therefore, in the context of supervision, the ten
22 years that apply to the drug count swallows the five years on
23 the drug count.  The PSI carefully goes through a number of
24 situations, conditions, issues in his life that when you look
25 at them and you read them, it gives you a good, a good basis

1   upon which you can consider 3553(a) factors, even in the
2   context of the guideline situation for the count of drugs.
3           I've looked at all that.  I have looked at the fact
4   that the sentence for the gun or firearms has to be
5   consecutive.
6           So I will sentence him to the statutory minimum drug
7   count, which is Count I, 120 months.  And 60 months
8   consecutive on the gun count, which is Count VI, the firearms.
9   And if you add those together, it's 180 months total.
10          The supervision, I already said what it is.  Ten
11  years and five years.  But ten take over.  So basically I'm
12  going to impose ten years on Count I, five years on Count VI,
13  knowing that ten years is going to be what he's going to
14  serve.
15          The standard conditions will apply to his
16  supervision.  That includes not committing another Federal,
17  state or local crime.  It includes not unlawfully possessing
18  controlled substances, and following any standard condition
19  that the Sentencing Commission has suggested and that we've
20  adopted here.
21          He cannot unlawfully possess controlled substances.
22  He has to refrain from possessing firearms, destructive
23  devices, or dangerous weapons.
24          He will participate in the transitional and re-entry
25  support services program, including behavioral treatment

1  services under the guidance of and supervision of the
2  probation department.  And he will remain in those services
3  until he's duly discharged.  That's at the time that he's in
4  supervised release.
5              I already said, he cannot use controlled substances.
6  Therefore, he has to be drug tested while on supervision.
7  First test within 15 days of release, and thereafter random,
8  not exceeding 104 samples per calendar year.
9              Full effect of the Drug After Care Program policy is
10 applicable to this case.  But I will not insist on the
11 co-payment clause, because he doesn't have the money to deal
12 with that at this time that I know of.
13             The search clause applies to his supervision.  That
14 means in very simple, practical terms that anything he owns,
15 anything he uses, anything he borrows, any kind of property,
16 moveable, real, whatever it may be, can be searched by a
17 supervising probation officer without a search warrant if that
18 officer is moved by reasonable suspicion of him having
19 contraband or having violated terms and conditions of release.
20             He has to give DNA samples as required by law.  No
21 fine is imposed.  The special monetary assessment is imposed.
22 It's a hundred per count.  Total 200.
23             He waived his right to appeal when he pled, Counsel,
24 or not?
25             MR. BOUCHER:  Yes.

1        MR. GAZTAMBIDE:  Yes.

2        THE COURT:  Did he?

3        MR. BOUCHER:  Yes, he did.

4        THE COURT:  You did waive your right to appeal, sir.
5   Do you understand that, Mr. Gonzalez?

6        THE DEFENDANT:  Yes.

7        THE COURT:  Yes?

8        THE DEFENDANT:  Yes.

9        THE COURT:  But in any event, had you not waived it,
10  you'd have had 14 days to enter a Notice of Appeal.  And you
11  would have been able to appeal in forma pauperis, that means
12  with a pre-payment of costs, and have the benefits of CJA,
13  Criminal Justice Act, for the payment of your attorney fees.

14       I am making a recommendation that he be designated to
15  an institution in the state of Florida.  And if that's not
16  possible, then southeastern region.  As close as possible to
17  Puerto Rico in other words.

18       And that he be allowed to participate in any kind of
19  vocational training at the BOP, which would be in mechanics,
20  could be in electricity, could be in air-conditioning, in
21  anything that can help him to make a living afterwards.

22       Any pending count is dismissed.

23       Anything else?

24       MR. GAZTAMBIDE:  Your Honor, just we know that the
25  way the law stands today, BOP doesn't recommend that he take

1   the 500 hour course.  But we ask if it can be recommended just
2   in case he can receive the same in the future.
3           THE COURT:  It is ridiculous up to a certain point
4   that the BOP doesn't offer or sometimes doesn't offer the 500
5   hour drug abuse treatment program to people who need it
6   because of the fact that they have touched a firearm.  I've
7   heard recently that some institutions are giving it.  So I'm
8   going to recommend it in this case even though he has the
9   conviction on Count VI.
10          MR. GAZTAMBIDE:  Your Honor, and not only that.  It's
11  that the 500 hours is not limited to only weapons, because
12  they go over people that drink or gamble.  So I don't see why
13  they don't give it to everybody that should receive it.
14          THE COURT:  I'm going to tell you why.  Because the
15  Bureau of Prisons is a very bureaucratic institution.  That's
16  the reason.  Narrow minded, bureaucratic institution.  Every
17  day I get more convinced of that.
18          Anything else?
19          MR. BOUCHER:  Nothing further, Your Honor.
20          MR. GAZTAMBIDE:  No, Your Honor.
21          THE COURT:  Very well.
22          (At 11:15 AM, proceedings concluded.)
23                       *     *     *
24
25

```
 1  U.S. DISTRICT COURT    )
 2  DISTRICT OF PUERTO RICO)
 3
 4       I certify that this transcript consisting of 16 pages is
 5  a true and accurate transcription to the best of my ability of
 6  the proceedings in this case before the Honorable United
 7  States District Court Judge José Antonio Fusté on November 4,
 8  2015.
 9
10
11
12
13  S/ Amy Walker
14  Amy Walker, CSR 3799
15  Official Court Reporter
```